### Case No. 2,595.

CHANEY v. BASKET et al.

[6 Reporter, 769.] [1]

Circuit Court, D. Indiana. Oct. Term, 1878.

GIFT CAUSA MORTIS—CHOSES IN ACTION—MONEY ON DEPOSIT—DELIVERY OF CERTIFICATE OF DEPOSIT.

1. Choses in action, whether negotiable or not, may be the subjects of gifts causa mortis.

---

[1] [Reported by permission.]

2. Money on deposit may be delivered as a gift causa mortis by a delivery of the certificate of deposit; but there must be at the time on the part of the donor an intention to transfer to the donee the present dominion and ownership of the money, subject, of course, to the usual condition attached to such gifts.

Bill by the administrator of one Chaney, deceased, to obtain a certain certificate of indebtedness for $23,514.70. The defendant, Basket, claims that sixty days before his death, Chaney, in full possession of all his mental faculties, but in apprehension of death from a disorder with which he was then suffering, with his own hand wrote and signed the following certificate, to wit: "Pay to Martin Basket, of Henderson, Ky., and no one else, then, not till my death. My life seems to be uncertain; I may live through this spell, then I will attend to it myself. (Signed.) H. M. Chaney." And delivered the said certificate so indorsed to the defendant, Basket; that Chaney died of said disorder, and said certificate so indorsed remained in his (Basket's) possession until he placed it in the hands of his counsel, the defendants, Shackelford and Richardson; and that the certificate was a gift to him in trust, as well for himself as his brothers and sisters, at his option. The money represented by the certificate was on deposit with the Evansville National Bank, Indiana. During the sixty days that elapsed from the delivery of the indorsed certificate to Basket, until his (Chaney's) death, in January, 1876, he was generally up about his premises, looking after his business, as he had been for months previously. It appears from a post mortem that he had also suffered from consumption. The testimony conclusively shows that at the time the certificate was delivered by him to Basket the said Chaney was not in extremis, and that he did not act in the apprehension of immediate death. On this point there was no serious controversy. His domicil being in the state of Tennessee at the time of his death, the laws of that state determine the succession to his personal property.

A. & J. E. Inglehart and T. T. Foreman, for complainant.

Shackelford & Richardson, Denby & Kumler, J. W. Gordon, and J. J. Turner, for respondents.

GRESHAM, District Judge (after stating the facts). Gifts causa mortis must be of personal property or choses in action actually delivered by the donor to the donee, in apprehension of approaching death from an existing disorder or other impending peril, and death must ensue from such existing disorder or other impending peril without any complete intermission. But without further effort to define such gifts, it is sufficient to say that they are not good and are never upheld without certain essential requisites, one of which is delivery, actual or constructive, to the donee, or some one in trust for him, of the

subject-matter of the gift. If the subject of the gift be capable of actual delivery, the delivery must be actual. Such gifts afford tempting opportunities for fraud, and therefore the Roman law requires them to be executed in the presence of five witnesses. And, inasmuch as delivery lessens the opportunity for fraud, it has always been held an absolute requisite to their validity. Money on deposit may be delivered by a delivery of the certificate of deposit, provided there be the intention at the time to transfer to the donee the dominion and ownership. It is now settled that choses in action, whether negotiable or not, may be the subjects of gifts causa mortis. Brunson v. Brunson, Meigs, 633; Brown v. Moore, 3 Head. 671; Meach v. Meach. 24 Vt. 591; Hanson v. Millett, 55 Me. 184; Cutting v. Gilman, 41 N. H. 151. The money itself was not delivered to Basket, nor was the certificate so assigned to him as to enable him to get possession of it. With the certificate, as indorsed, he had no right to demand the money from the bank. If on his demand the bank had paid the money, such payment would not have protected the bank against another demand by the donor. The indorsement was not of such a character as to enable him therewith to reduce the money to his possession. He could not, by virtue of the indorsement, have compelled the delivery of the money to him by the bank during the life of the donor. The donor, by the indorsement, had not parted with the possession or dominion of the property. It was still under his control. The language of the indorsement is certainly inartistic, but its meaning is patent. In legal effect it is, "if I die in my present illness, it is my intention that the money evidenced by this certificate of deposit shall belong to Martin Basket. When I thus die, and not before, it shall be paid to him." With this clear intention of the donor not to part with his money as long as he lived, it will not do to say that delivery of the certificate was a constructive delivery of the money evidenced by it. But it is said that the subject of a gift causa mortis vests in the donee only at the death of the donor. and that therefore the conditions expressed in the assignment would have been implied, if the certificate has been delivered. with a blank indorsement, or no indorsement at all. It must be conceded that some of the authorities seem to support this view. A will is the disposition of one's estate, to take effect after his death. Any disposition of property to take effect upon the death of the owner or donor is testamentary. It is the essence of a bequest that it take effect on the death of the testator. It appears by the very terms of the assignment that no present title or interest in the money could pass to the donee during the life of the

donor. No instrument of writing can be both a last will and testament, and a gift causa mortis. The indorsement was testamentary in character, and if it has been properly executed according to the statutes of Tennessee, it doubtless might have been probated as the donor's will.

There is a wide difference between a legacy and a gift. Both possession and title must pass to the donee to constitute a gift. This applies as well to gifts causa mortis as to gifts inter vivos. The title must pass inter vivos, or it never can pass, but will go to the donor's legal representative. In a gift inter vivos, the donor reserves no right of revocation; in a gift causa mortis he does. The donee of a gift causa mortis holds the thing given not as a bailee of the donor, but as present owner on the condition attached to such gifts. A gift causa mortis vests in the donee a present but inchoate or defeasible title until the happening of the event necessary to render it absolute, and therein it differs from gifts testamentary and inter vivos. This question is discussed in Gass v. Simpson, 4 Cold. 293. "The property," say the court, "must pass at the time, and be intended to pass at the giver's death. * * * At the death of the donor the title becomes complete and absolute by relation from the date of the gift, and that without any consent or other act on the part of the executor or administrator; consequently the gift is not inter vivos." Duncan v. Duncans, 5 Litt. [Ky.] 12. In Parish v. Stone, 14 Pick. 198, the transfer of choses in action as gifts causa mortis is discussed. "These cases," said Chief Justice Shaw, in delivering the opinion of the court, "all go on the assumption that the bond, note, or other security is a valid and subsisting obligation for the payment of a sum of money,. and the gift is in effect a gift of the money, by a gift and delivery of the instrument which shows its existence and affords the means of reducing it to possession." In the case at bar, the certificate was delivered, as the language of the indorsement clearly shows, with no intention of a present gift of the money, with authority to the donee to reduce it to possession. On the contrary, the indorsement was of such a character as to absolutely prohibit the donee from claiming any present title to the money, or any right to reduce it to his possession during the life of the donor. Decree that the certificate of deposit be delivered to the complainant, and that the money evidenced by it be paid to him.

(Other authorities noted were: 2 Kent, Comm. marg. p. 444; Story, Eq. Jur. §§ 605, 606, note 1; 1 Williams, Ex'rs, 651; 2 Whart. Ev. 17.)

Decree accordingly.