## LAMSON vs. MOFFAT.

*September 23 — October 14, 1884.*

*(1, 2) Lease or mortgage: Parol evidence of intention: Court and jury.
(3) Mortgage of future crop invalid.*

1. A written contract by the terms of which M. leases a farm to L. for one year, surrenders possession at once, and agrees to do all the work in raising a crop thereon and to deliver the whole of such crop to L.,— the latter agreeing to furnish all the groceries needed by M., to furnish the seed, to sign a promissory note of even date with the contract for the sole benefit of M., and upon delivery of the crop to give M. a receipt for $300 of present indebtedness of M. to L., is upon its face a *lease*, but may be shown by parol or other competent evidence to have been intended merely as a *mortgage of the crop*. If so intended the rights of all persons interested in the crop will be determined accordingly.

2. Evidence that L. required M. to give his note for the seed which the former was to furnish, and that the groceries furnished were charged on L.'s books as a debt due him from M., was sufficient to carry to the jury the question of the intention of the parties.

3. A mortgage of a crop thereafter to be raised is void as against a subsequent purchaser from the mortgagor, unless before such purchase the mortgagee took actual possession of the property.

APPEAL from the Circuit Court for *St. Croix* County.

The case is stated in the opinion.

For the appellant there were briefs by *Baker & Smith,* and oral argument by *Mr. Baker.*

For the respondent there was a brief by *R. H. Start* and *L. P. Wetherby,* and oral argument by *Mr. Start.*

TAYLOR, J. This action was brought by the respondent to recover the value of twelve stacks of wheat and four stacks of oats, which he alleged he owned, and that the defendant, the present appellant, had wrongfully taken and converted to his own use.

It is admitted by both parties that the wheat and oats were raised and stacked on a farm owned by one John

Murphy. The respondent claimed title to the property under an agreement entered into between himself and Murphy, by virtue of which he claimed to have leased the farm of Murphy for one year. The wheat and oats were raised on the farm during the year covered by such claimed lease, and the respondent claimed the property as tenant of Murphy. The appellant and defendant claimed the property (1) under a chattel mortgage executed to him by said Murphy upon the growing crop; and (2) by a sale of the wheat and oats to him after the same were in stack. The chattel mortgage was dated May 5, 1880, and the deed of sale, September 3, 1880. The instrument which the respondent claims was a lease of the land of Murphy to him was dated December 19, 1879.

On the trial in the court below, and upon the argument of the appeal in this court, the learned counsel for the appellant claims that the contract between Murphy and the respondent does not, on its face, show a leasing of the premises of Murphy to respondent for one year or for any other term, but that, if it was of any validity at all, it was in the nature of a mortgage upon the crop which Murphy might raise on the farm for the coming year, and as such it was void as against the appellant, claiming, by a subsequent mortgage and by his bill of sale, for two reasons: *first*, because it was an attempt to mortgage property not in existence at the time the mortgage was given; and, *second*, because the mortgage was not filed in the proper town clerk's office, and the mortgaged property remained in the actual possession and under the control of Murphy, the mortgagor. The following is a copy of the contract between Murphy and the respondent:

"This article of agreement, made and entered into this 19th day of December, A. D. 1879, by and between John Murphy, of Warren, St. Croix county, Wisconsin, party of the first part, and *Levi J. Lamson*, of the same place, party

of the second part, witnesseth: That the said party of the first part does hereby lease unto the said party of the second part his (said John Murphy's) farm, situate and being on sections 6 in Warren and 1 in St. Joseph townships, St. Croix county, Wisconsin, for the consideration, and on the terms and under the conditions hereinafter mentioned, for and during the term of one year.

"1st. The said party of the first part surrenders possession of said farm to said party of the second part this day. The said party of the first part further agrees to do all the work for the said party of the second part in putting in and harvesting and threshing the grain on said farm, and give the whole thereof to said party of the second part at Burkhardt's mill, in St. Joseph, in fall of 1880. In consideration of which the party of the first part hereby agrees: 1st. The party of the second part is to furnish all groceries required by party of the first part, for use of his family and hired help, required on farm, and party of the first part is to have the right to use dwelling-house on farm for the purpose of living in with his family and hired help, and party of the second part is to furnish his own seed-wheat for the farm.

"2d. The party of the second part further agrees, in consideration of these presents, to sign a promissory note of even date hereof jointly with the party of the first part, for said first party's sole benefit.

"3d. The party of the second part further agrees, in consideration hereof, to give a receipt to party of the first part in payment of $300 of present indebtedness by party of the first part to party of the second part, at the time when said party of the first part shall have delivered all grain raised on farm in 1880, to the credit of party of the second part, at Burkhardt's mill, aforesaid, in fall of 1880."

We are of the opinion that this contract on its face is a lease of his farm by Murphy to the respondent for one year. Unexplained, *Lamson* would be the tenant of Murphy for

the year, and the crops raised on the farm would be the property of *Lamson*. Notwithstanding the contract on its face makes *Lamson* the tenant of the farm for one year, and therefore the owner of the crop raised thereon during the term, it was competent for the appellant to show that the intent of the parties to the contract was not to make *Lamson* the actual tenant, and therefore owner of the crop raised on the farm, but was intended to secure *Lamson* for his debt against Murphy; and if Murphy paid the debt the contract was to be of no effect between them. It presents the well-settled proposition that a bill of sale of chattels, or an absolute deed or lease of real estate, may be shown to have been given as a mortgage security, by parol or other competent evidence; and when the evidence satisfactorily shows that fact, then the conveyance, whatever its nature or form, will be treated as a mortgage; and the rights of the parties under such contract will be such, and such only, as they would have been had the writing on its face created the relation of mortgagor and mortgagee. The following are a few of the cases in this court which establish the proposition above stated: *Plato v. Roe*, 14 Wis. 453; *Sweet v. Mitchell*, 15 Wis. 641; *Kent v. Lasley*, 24 Wis. 654; *Kent v. Agard*, 24 Wis. 378; *Wilcox v. Bates*, 26 Wis. 465; *Dobbs v. Kellogg*, 53 Wis. 448; *Brinkman v. Jones*, 44 Wis. 498.

In this view of the case it seems to us very clear that the learned circuit judge erred in refusing to give the jury the following instruction requested by the appellant: "If you find from the evidence that the lease was not intended to transfer the possession and cultivation of the farm to *Lamson*, but was made with the understanding and intention that Murphy should remain in possession and cultivate the farm, and was intended to be only a means of securing to *Lamson* upon the crop the sum due and to become due him from Murphy, I charge you that.it was not sufficient in law to pass to *Lamson* the title to the crop or the right to the

possession thereof against the defendant, if you find the defendant took the mortgage in good faith." It seems to us that this request presented the true rule which should govern the rights of the parties, if there was any evidence in the case which tended, to show that the parties intended the writing·called a lease, and which on its face was a lease, as a mere mortgage security. As a mortgage security it was void as to a subsequent mortgagee or vendee taking his mortgage or making his purchase without knowledge of the rights of *Lamson*, or in good faith, for the reason that the mortgage was not filed as required by law, and because the evidence tended to show that the property remained in the actual possession of the mortgagor.

We think there was evidence which should have been submitted to the jury upon the question as to the intent of the parties to treat the contract between them as a mortgage. We will mention but two facts which appeared in the evidence. Although the contract of leasing requires the respondent to furnish all the seed-grain at his own cost, yet the evidence shows he required Murphy to give him his note for the value of the same, payable about the time the crop would be in readiness for market. The respondent also charged the groceries, which, by the lease, he was to furnish Murphy at his, respondent's, own cost, upon his books as a debt due to him from Murphy. There is other evidence of a like character. It is true, the respondent gives his explanation of these transactions. It cannot, however, be said as a question of law that these explanations are of such a nature as to entirely overcome the inference which the jury might rightfully draw from the facts themselves. The question of the intent with which the lease was made was clearly one for the jury, and not for the court, upon the whole evidence. The instruction asked was qualified by the last clause, requiring the appellant to have acted in good faith in taking his subsequent mortgage. If this qualifica-

tion was intended to make the appellant's right depend upon his knowledge of the existence of the claim of the respondent under his mortgage in the shape of the lease between himself and Murphy, it was more favorable to the respondent than the law required.

If the transaction between Murphy and the respondent was shown to be a mortgage security in fact, then such mortgage would be absolutely void as to a subsequent mortgagee or vendee of Murphy, for the reason that the property intended to be covered by the mortgage was not in existence when the mortgage security was given, unless there was evidence given showing that the respondent had taken the actual possession of the property intended to be mortgaged after it came into existence and before it was mortgaged or sold to the appellant. *Comstock v. Scales*, 7 Wis. 159; *Chynoweth v. Tenney*, 10 Wis. 397, 407; *Farmers' L. & T. Co. v. Comm. Bank*, 11 Wis. 207; *Single v. Phelps*, 20 Wis. 398; *Mowry v. White*, 21 Wis. 417; *Hunter v. Bosworth*, 43 Wis. 583; *Farmers' L. & T. Co. v. Fisher*, 17 Wis. 114; *Farmers' L. & T. Co. v. Cary*, 13 Wis. 110.

It is clear, from an examination of the general charge of the learned circuit judge, that the question asked to be submitted to the jury, as above quoted, was not submitted, and the error of refusing it was not cured. It is evident, from the whole tenor of the charge, that the learned circuit judge construed the writing between Murphy and the respondent as a lease of the farm to the respondent for one year, and that as tenant the respondent was the owner of the crop. And the only question submitted was whether such lease was made in good faith, and not with intent to defraud the other creditors of Murphy. We think the construction given to the writing itself by the learned judge was its proper construction; but, notwithstanding that fact, if it was intended by the parties that it should operate as a mortgage security, then, as between the parties to this action, it must

be treated as a mortgage, and the rights of the parties must be determined upon the understanding that, though a lease in form, it was a mortgage in fact.

For the error in refusing to submit that question to the jury, the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.