### WILFRED M. KELLOGG v. THOMAS LOVELY.

*Vendor's lien—Mortgage on breeding mare.*

The reason for a ruling is not important in the review of a case, if the result is correct.

The lien on property retained by the vendor covers all its natural incidents and accessories unless circumstances show a different intent.

Where one buys a mare on credit and gives a chattel mortgage on her for the entire purchase price, and she is afterwards found to be with foal which is not weaned before the credit expires, he is not entitled to keep the colt if he makes default in payment and the mare is taken on the mortgage.

Error to Shiawassee. Submitted Apr. 15. Decided Apr. 27.

TRESPASS on the case. Plaintiff brings error. Affirmed.

*McBride & Fraser* for plaintiff in error.

*McKercher & Bush* for defendant in error. A mortgage on a mare with foal covers the colt after it is foaled: Herm. Chat. Mortgages 86; Thomas Chat. Mortgages 474; *Forman v. Proctor* 9 B. Mon. 124; *Dunkan v. Chashin* 14 Eng. 418; *Thorpe v. Cowles* 7 N. W. Rep. 649; *Evans v. Merriken* 8 Gill. & J. 39; *Fowler v. Merrill* 11 How. 375.

GRAVES, J. The circumstances of this controversy are as follows: In October, 1878, the defendant [Lovely] sold the plaintiff [Kellogg] on credit, a mare, buggy and harness for the agreed price of $250, and the plaintiff gave his note together with a mortgage on the property for the entire sum.

The mare was with foal and about the first of June following she dropped the colt. On the first of July the mortgage became due, and Kellogg failing to pay, Lovely proceeded to take the property. There was no dispute about his right to take the mare, buggy and harness, but the parties appear to have differed about the colt. Lovely maintained that the mortgage applied to it and gave him the same right to the colt that it did to the mare, but Kellogg contested this claim and contended that the colt being the offspring of the mare was his property and not having been born when the mare was purchased and the mortgage given was not subject to the mortgage.

The colt had not been weaned and was running with the mare, and when Lovely drove her off the colt followed. Lovely soon afterwards proceeded to sell the whole property, the colt included, under the mortgage, and we gather from the case that it was bought in by him through an agent. The whole sum for which the property was struck off was $176, and shortly afterwards Kellogg paid the remainder of the debt. He then instituted replevin against Lovely, before a justice of the peace, to obtain the colt, and it was seized on the writ and delivered into his possession. The justice entered a nonsuit against him, and Lovely waiving return of the colt the value was assessed at $55, for which Lovely took judgment. An appeal was made and the circuit court reduced the assessment to $30 and awarded Kellogg $78 costs, and extinguished the former by applying an equal amount of the latter by way of set-off. Thereupon Kellogg sold the colt and brought this action of trespass, counting on the transaction when Lovely took the mare on the mortgage. The justice gave judgment in Kellogg's favor for the value of the colt, and Lovely appealed. The circuit judge ruled that there was no evidence of trespass and ordered a verdict

for Lovely. It is not certain that the circuit judge was correct in the reason on which he proceeded. But whether he was so or not is unimportant unless the result was wrong.

The fundamental question in the case relates to the effect on the legal ownership of the colt, of the sale of the mare to Kellogg and the mortgage back.

In respect to tame and domestic animals the general rule is well understood, that "the brood belongs to the owner of the dam or mother" (2 Bl. Com. 390), but there are many cases in which the rule is qualified in its application. It has been held and may be true in special cases that where the female is hired for a time limited and has increase during the term, the hirer will be entitled to it and not the general owner: 2 Kent 361; Edwards on Bailments § 403; *Putnam v. Wyley* 8 Johns. 432; *Concklin v. Havens* 12 Johns. 314; *Hanson v. Millett* 55 Me. 184; *Stewart v. Ball* 33 Mo. 154. And so too it was decided in *Linnendoll v. Terhune*, that a foal obtained under an agreement by which the owner of the mare arranged with another person that if he would put her to horse and pay the expense he should have the foal, became the property of such person. 14 Johns. 222.

It is also laid down by Judge Story that where a thing is pledged its natural increase as accessory is also pledged, and he gives by way of illustration the case where a flock of sheep are pledged, and observes that the young afterwards born, are also pledged. Bailments, § 292; and see Domat, part 1, book 3, tit. 1, § 1, art. 7; Kaufm. Mackeldey, book 1, § 267. In Iowa and Kentucky, and probably in other States, it has been decided that the young of animals under mortgage are subject to the mortgage (*Forman v. Proctor* 9 B. Mon. 124; *Thorpe v. Cowles* — Iowa —;) and no cases to the contrary have been discovered. Perhaps these last decisions may have originated in the doctrine that the mortgagee of chattels is the legal owner; and the courts may have considered that in holding the young of mortgaged animals to be subject to the mortgage, they were only applying the general rule which assigns the increase to the owner of the mother. But it is useless to speculate on the subject.

The case before the court belongs to a peculiar and exceptional class, and it may be disposed of without bringing into question the general doctrine. . As previously stated, the mare was carrying her colt when Lovely sold her, and the plaintiff, not paying anything whatever, gave back at the same moment a chattel mortgage for the entire price. There was no interval of time between the sale and mortgage. Each took effect at the same instant. The whole was substantially one transaction. Now it is a rule of natural justice that one who has gotten the property of another ought not, as between them, to be allowed to keep any part of its present natural incidents or accessories without payment, and that the party entitled should have the right to regard the whole as being subject to his claim. The one ought not to suffer loss, nor the other effect a gain, through a mere shuffle, and whatever fairly belongs to the thing in question, as the young the dam is carrying belongs to her, ought to be as fully bound as the thing itself, unless indeed there are circumstances which imply a different intention.

It is not unreasonable to construe the acts of these parties by these principles and to consider that when Lovely sold the mare without receiving anything down, and Kellogg gave back the mortgage for the whole purchase price to be due before the colt, according to the ordinary course of things, would be old enough to be separated from the mare, it operated as well to hold the colt as to hold the mare herself. The intendment is a fair and just one that the security was to be so far beneficial to Lovely as to preserve to him the right to claim at the maturity of the mortgage the same property he would have had in case he had made no sale. According to this view there was the same right to the colt as to the mare, and the act of seizure sued for was not a trespass.

The result ordered by the circuit judge was therefore correct, and the judgment must be affirmed with costs.

The other Justices concurred.