THE FIRST NATIONAL BANK OF AUSTIN v. THE WESTERN MORTGAGE
AND INVESTMENT COMPANY.

No. 230.

1. **Bona Fide Purchase — Pre-existing Debt.**—A pre-existing debt is not a sufficient consideration as a basis for an innocent purchaser or mortgagee.

2. **Construction — Herd of Cattle — Increase.**— A mortgage was executed upon stock cattle described as follows:  "My herd of 1500 head of cattle located on my ranch pasture in McCulloch County, Texas, each and all of such cattle being marked and branded with the following marks and brands, F+H, and consisting of bulls and breeding and grazing cattle of one year old and upwards."   The entire herd was subsequently mortgaged, and the second mortgagee claimed the cattle under one year old, and the increase.   *Held:*

1. The words "of one year old and upwards" did not limit the general term *herd*, as the general purpose evident in the instrument was to mortgage the herd owned by the mortgagor and upon his ranch.

2. The mortgage upon the herd included the increase.

Error from Travis.   Tried below before Hon. W. M. Key.

*Peeler & Peeler*, for plaintiff in error.

*A. M. Jackson, Jr.*, for defendant in error.

FISHER, Chief Justice.—Plaintiff in error sued James Ford and J. L. Driskill to recover on certain promissory notes executed by them, payable to plaintiff in error, and to foreclose a mortgage on certain real estate and cattle.   The defendant in error, the Western Mortgage and Investment Company, was made defendant for the reason that it claimed to have a lien upon the same property.   Plaintiff's petition alleged that its mortgage was to secure a debt existing—that is, the notes sued on— at the time it was executed.

The defendant in error, the Western Mortgage and Investment Company, answered, that defendant Ford was indebted to it, and had, prior to the mortgage of the plaintiff, executed to defendant a mortgage covering the cattle in controversy, and that the plaintiff in error had notice of that fact, and that it was not mortgagee for value.

The court below submitted to the jury only the issue as to whether the plaintiff in error had notice of the mortgage executed by Ford to the defendant in error at the time its mortgage was executed.   In response to this issue, the jury found that the plaintiff did have notice. Thereupon the court rendered judgment in favor of the Mortgage and Investment Company, foreclosing its lien on the property and giving it priority.

*Opinion.*—We do not pretend to set out all of the facts, but find only such facts as are necessary to be considered in disposing of the issues raised by the briefs of the parties.   These facts are as follows:

September 4, 1885, James Ford, in order to secure a debt of $39,075 due the Western Mortgage and Investment Company, executed and delivered to it a mortgage upon the following described cattle:  "My herd of 1500 cattle, located on my ranch pasture in McCulloch County, Texas, each and all of said cattle being marked and branded with the following mark and brand, F + H, and consisting of bulls and breeding and grazing cattle of one year old and upwards."

January 3, 1887, James Ford executed and delivered to the plaintiff in error a mortgage, to secure a debt of $28,780.35, on the following described cattle:  "All cattle in the following brand, to-wit, F + H, estimated at 2000 head.   Some of said cattle are now in my pasture in McCulloch and Menard Counties, Texas, and the remainder on the range in said counties and elsewhere in the State of Texas, together with the

increase of said cattle.'' This mortgage was not given at the time the debt was created, but was executed subsequent to that time, and upon no new consideration, so far as shown by the facts in the record.

At the time the plaintiff in error's mortgage was executed, the jury have found, it had notice of the existence of the mortgage previously executed to the Western Mortgage and Investment Company, and as the facts upon this issue are not given in the record, and as counsel have agreed that the evidence upon this point was conflicting, we find, in deference to the verdict, that the plaintiff in error had notice of the existence of the mortgage executed by Ford to the defendant in error.

The possession of the cattle covered by these mortgages remained with the defendant Ford, the mortgagor, until the foreclosure by the judgment rendered in this cause.

At the time the mortgage to the defendant in error, the mortgage and investment company, was executed, there were in the herd of cattle covered by said mortgage about 200 calves under one year old, and the increase of said stock of 1500 head covered by said mortgage since its date of September 4, 1885, up to the time the judgment was rendered by the court below, is about 1800 head. No other cattle have been added to said stock so mortgaged except the increase.

We deem it unimportant to discuss at length that phase of the case that complains of errors of the court in its charge on the question of notice, and of its refusal to give certain charges upon that subject. The question of notice is unimportant, as it appears that the plaintiff in error acquired its subsequent mortgage solely upon the consideration of the pre-existing debt due it by Ford. Whether it had no notice of the prior mortgage of the defendant in error at the time it acquired its mortgage would not better its condition, because it is not supported by such a consideration as would protect it as an innocent purchaser or subsequent mortgagee.

We apprehend that a subsequent mortgagee who acquires his rights without notice stands in no better position than a subsequent purchaser without notice. In the latter case, it has been steadily held by a long line of decisions in this State, that an antecedent or pre-existing debt is not a sufficient consideration as a basis for an innocent purchaser without notice. Overstreet v. Manning, 67 Texas, 659; Watkins v. Edwards, 23 Texas, 443; Ayres v. Duprey, 27 Texas, 593; Bailey & Pond v. Tindall, 59 Texas, 540; McKamey v. Thorp, 61 Texas, 648; Funk v. Paul, 64 Wis., 35; Jones on Mort., sec. 458.

But independent of this view of the law, as the record does not disclose the facts on the subject of notice, but simply says that the evidence upon this point was conflicting, we can not say that there was any error committed in the charge of the court or in refusing the charges requested.

We come now to the main question in the case: Does the prior mortgage of the defendant in error, although it does not mention increase, cover the increase of said herd of cattle so mortgaged, and does it include the calves then existing at the time of its execution that were under the. age of one year?

The court below, as indicated by the judgment it rendered, held that. the increase and calves were covered by the mortgage, and gave judg-- ment of foreclosure thereon in favor of the mortgage and investment. company, defendant in error.

The parties admit that the increase of stock may be mortgaged, but the. plaintiff in error contends that the prior mortgage of the defendant in error does not cover the increase, and that the language of the mortgage by the use of the words " one year old and upwards," in describing the property mortgaged, excludes the idea that it was the purpose of the parties to the instrument that it should embrace the increase and the calves. then existing under the age of one year.

We have had some difficulty in determining the proper construction that should be given to the words " one year old and upwards." The doubt was whether these words should be held to restrict the application of the mortgage simply to those classes of cattle given in the descriptive. portion of it, and thereby to exclude all under the age of one year, or whether the purpose was to create a lien upon the entire herd of cattle, regardless of their classes or age. Giving effect to the entire range of the descriptive language of the mortgage, we have reached the conclusion. that the mortgage covers and includes the entire herd of cattle owned by James Ford located on his ranch pasture in McCulloch County at the time it was executed. The purpose was, we think, to mortgage the herd, and giving the ages and classes of cattle was simply an attempt to state what the herd consisted of, and the special mention of all cattle of one year old and upwards was not intended to exclude from the operation of the mortgage those under that age. We do not think this was a limitation imposed upon the general term " herd," and taking this word in the sense in which it is commonly used and understood, we think that it would embrace all the stock in the certain herd described. If the mortgage in this case had simply described the property as " my herd of cattle in my ranch pasture in McCulloch County, Texas," there could be no question but that it would have covered all the cattle that constituted the herd. While it is a fact of which the courts may not assume judicial knowledge, still it is well and commonly known, that in sales of cattle by the herds or brands or stocks, it is usual to include calves that belong to. the brand or stock, without an especial accounting therefor. We believe such was the purpose of the instrument before us, and that it includes all the cattle of the herd or stock.

We now reach the question, whether the mortgage will cover the increase of the herd, without a special mention to that effect. The following authorities lay down the rule, that between the parties to the instrument, the mortgage of personal property covers and includes its increase: Evans v. Meniken, 8 Gill & J., 43; Hughes v. Groves, 1 Littell (Ky.), 317; Meyes Bros. v. Cook, 85 Ala., 419; Cohorn v. Miers, 67 Md., 576; Dyer v. State, 88 Ala., 229; Forman v. Proctor, 9 B. Mon., 124; Grundy v. Beteler, 6 Ill. App., 511; Pyatt v. Powell, 51 Fed. Rep., 553; 130 U. S., 78; Funk v. Paul, 64 Wis., 38; Kellogg v. Lonly, 46 Mich., 133; Cobby on Chat. Mort., secs. 352, 369; Story on Bail., sec. 272; Jones on Chat. Mort., secs. 149, 150; 3 Laws. on Rights and Rem., sec. 1370; 4 Id., sec. 1759.

In Edwards v. Osman, 84 Texas, 659, in the foreclosure of a mortgage that did not cover the increase of the cattle, the court say: "It is true the mortgage did not expressly include the increase of the stocks of cattle in the brands mortgaged, but we are not prepared to assent to the proposition that this was necessary in order to extend the mortgage to the natural increase." But the question is not decided, as the case is disposed of and the judgment of the trial court foreclosing the mortgage upon the increase is affirmed upon other grounds. But the decision could have rested upon this view of the law, and if not express authority upon the question, it is, to say the least, very persuasive.

Some of the authorities cited apply to pledges, but we can see no reason in principle why the same rule of law should not apply to property mortgaged, although the mortgagor has not parted with possession. In this State the mortgagor retains the title and right to possession of the property encumbered, subject to the lien in favor of the mortgage. By reason of this rule some of the cases cited as authority for our holding may not be entitled to much weight in support of our views, as in the main they seem to rest upon the common law rule, that the mortgagee becomes the owner of the thing mortgaged, and as an incident of such ownership is also entitled to the increase and the fruits arising from the subject mortgaged. But as between the parties to the mortgage, when the rights of no innocent third party have intervened, we believe the mortgage of the dam covers its increase, and that the mortgage should extend not only to the thing described, but to all that shall arise or proceed from it.

We have discussed this question from the standpoint as if a controversy between the parties to the mortgage, because the plaintiff in error, not being a subsequent mortgagee for value, stands in the same position as if the controversy was between Ford, the mortgagor, and the defendant in error. If the plaintiff in error had been a subsequent mortgagee for value without notice, we are not prepared to say that we would have laid down

the rule with reference to the mortgage covering the increase as broadly as we have stated it; but, however, as this question is not before us, we leave it open.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered January 3, 1894.